# STATE OF MICHIGAN

# COURT OF APPEALS

MAURICE FULLER,

        Plaintiff-Appellant,

v

RITA HOWARD,

        Defendant-Appellee.

UNPUBLISHED
December 1, 2015

No. 322439
Wayne Circuit Court
LC No. 13-000214-NI

Before: METER, P.J., and WILDER and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent.

I agree with the majority's recitation of the applicable law and do not repeat it. I agree explicitly with what the majority makes implicit: that for purposes of resolving the instant summary disposition matter, the only dispute is whether plaintiff's injuries "affect [his] general ability to lead [his] normal life." MCL 500.3135(7); *McCormick v Carrier*, 487 Mich 180, 194-195; 795 NW2d 517 (2010). My belief is that the impact of the majority opinion is a conclusion that because plaintiff's life was not a terribly exciting place prior to the accident and is not a terribly exciting place after the accident, his general ability to lead his normal life was unaffected. Although plaintiff was not the most articulate of witnesses, I am not persuaded that his claims were so vague as to be worthless.

Plaintiff testified that he had no hobbies to speak of, no romantic relationship, no job, and participated in no sports. However, he did not *entirely* lack for any more active entertainment. Although staying at home and watching television was apparently a large part of his life, he also stated that he rode his bicycle for fun. After the accident, he was unable to sit up for very long, he had ringing in his ears, he suffered from sleeping problems and numbness and tingling in his fingers, and his vision lacked clarity. Even though he did not attempt to ride his bicycle after the accident, I find it difficult to believe that someone would necessarily need to conduct a field test to know whether one would be able to do so. He testified that he received some drugs for at least some of those issues, but that those drugs had no meaningful effect. His testimony further strongly implied that he had been able to prepare his own meals prior to the accident, but he now relied on his mother to cook for him.

As the majority notes, some of those complaints, such as plaintiff's tinnitus or headaches, were not corroborated by medical documentation. However, medical documentation is not an

-1-

absolute requirement. *McCormick*, 487 Mich at 198. An "objectively manifested" impairment is simply one that has some evidently physical cause beyond a subjective complaint of suffering. In any event, although the trial court was not obligated to consider Dr. Teklehaimanot's unsigned affidavit, I agree with plaintiff that no authority has been cited to the effect that the trial court was obligated to ignore it. It appears that the trial court actually *did* consider the affidavit in the interests of affording the non-moving party as favorable a view of the evidence as possible. Consequently, there is medical documentation supporting, at the very least, plaintiff's headaches, back pain, and numbness and tingling in his fingers.

The important point of departure I have with the majority's opinion is the implied failure to recognize that to a person who is already living a rather spartan existence, even an ostensibly small change can have a disproportionately large impact. If a person has many hobbies, losing one of them might at least arguably be of little practical consequence. If a large part of a person's life before and after an accident consists of watching television, it is easy to lose track of the possibility that the small things may be the most important ones. I am concerned that the majority's opinion implies that the more minimal a person's lifestyle prior to an accident, the harder it will be for them to establish that any ensuing changes meet the no-fault threshold on the grounds that what might seem a subtle distinction to a person at a comfortable distance might be devastating to a person who already had little before the accident.

Ultimately, I find that plaintiff has established a question of fact whether his general ability to lead his normal life has been affected by the accident. His normal life may well have largely consisted of staying at home and watching television, but he amply established that his life was not *exclusively* staying home and watching television. What little more there was, up to and including being able to sleep well or even focus on things, let alone his sole active hobby of bicycling, has, by his testimony, been massively degraded. It may not seem like much, but there is a reasonable question of fact whether it was important to plaintiff. Under the case-specific analysis required by *McCormick*, I conclude that the trial court erred by granting summary disposition. I would reverse and remand to permit plaintiff the opportunity to make his case to a jury.

/s/ Amy Ronayne Krause